UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------x

19-CR-286(AMD)

UNITED STATES OF AMERICA,

United States Courthouse
Brooklyn, New York

Plaintiff,

-against-

August 19, 2020
3:00 p.m.

ROBERT SYLVESTER KELLY,

Defendant.
---------------------------------x

TRANSCRIPT OF CRIMINAL CAUSE FOR TELECONFERENCE
BEFORE THE HONORABLE ANN M. DONNELLY
UNITED STATES DISTRICT JUDGE
VIA TELECONFERENCE

APPEARANCES

For the Government: UNITED STATES ATTORNEY'S OFFICE
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
BY: ELIZABETH GEDDES, AUSA
MARIA E. CRUZ MELENDEZ, AUSA
NADIA SHIHATA, AUSA

For the Defendant: LAW OFFICE OF DOUGLAS C. ANTON, ESQ.
3 University Plaza Drive, Suite 207
Hackensack, New Jersey 07601
BY: DOUGLAS C. ANTON, ESQ.

GREENBERG TRIAL LAWYERS
53 West Jackson, Suite 1260
Chicago, Illinois 60604-6060
BY: STEVEN A. GREENBERG, ESQ.

(Appearances continued on next page.)

Court Reporter: Georgette K. Betts, RPR, FCRR, CCR

Proceedings recorded by mechanical stenography. Transcript produced by computer-aided transcription.

APPEARANCES (Continued)

For the Defendant:

LEONARDMEYER LLP
120 N. LaSalle, Suite 20th Floor
Chicago, IL 60602
BY: MICHAEL I. LEONARD, ESQ.

THE LAW OFFICE OF THOMAS A. FARINELLA
260 Madison Avenue, 8th Floor
New York, New York 10016
BY: THOMAS A. FARINELLA, ESQ.

Court Reporter:

Georgette K. Betts, RPR, FCRR, CCR
Phone: (718)804-2777
Fax: (718)804-2795
Email: Georgetteb25@gmail.com

Proceedings recorded by mechanical stenography. Transcript produced by computer-aided transcription.

(All present via teleconference.)

THE COURT: Hi, it's Judge Donnelly. Donna, could you call the case, please.

THE COURTROOM DEPUTY: This is a criminal cause for teleconference, docket number 19-CR-286. U.S.A. versus Robert Kelly.

Before asking the parties to state their appearance, I would like to note the following:

Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court.

Counsel, state your appearance, government first.

MS. GEDDES: Elizabeth Geddes, Nadia Shihata and Maria Cruz Melendez for the government.

Good afternoon, Your Honor.

THE COURT: Good afternoon.

MR. ANTON: Good afternoon, Judge. Douglas Anton and co-counsel Michael Leonard, Thomas Farinella, and Steve Greenberg on the phone, as well as our client, Robert Kelly, from the MCC Chicago.

THE COURT: Good afternoon, everyone. I called the

status conference because we have a trial scheduled for the end of September, but I don't think this will come as a surprise to anyone, I don't think that's particularly realistic given our current health crisis. I did speak with Judge Leinenweber about what's going on in Chicago and the logistical concerns that I have are probably similar to the ones that confront Judge Leinenweber in Chicago.

In New York, we have a travel advisory in place that requires witnesses, and in this case lawyers, traveling to New York to quarantine for two weeks and that applies to the courthouse obviously as well, requires you to quarantine for two weeks before coming in the courthouse. And there is -- well, what I'd like to do first of all, in an effort to try to move this along as quickly as I can under the circumstances, I want to double check a couple of things here. I think the last time we spoke the parties anticipated a trial of about four weeks.

Is that still what you think? I guess I'll ask the government first.

MS. GEDDES: Yes, I believe four weeks is still an accurate estimate.

THE COURT: All right.

MR. ANTON: Judge, Doug Anton speaking. Based on what we have now, it seems four to six weeks is about accurate.

THE COURT: And just to be clear, I apologize if I've asked this before, but when we talk about four weeks, are we talking about both the prosecution and defense case?

MR. GREENBERG: Judge --

MR. ANTON: That's what I understand.

MR. GREENBERG: I'm sorry. This is Steve Greenberg. I think that the government is in the best position to tell us how long a trial would take. We can't really tell you what the defense case would consist of because of discovery issues at this point.

THE COURT: Right. I mean, I'm not -- I'm really just trying to get an idea of how much time we're talking about, so I think to be on the safe side we'll say four to six weeks and from the government's perspective approximately how many witnesses do you think you'll have?

MS. GEDDES: Your Honor, I apologize, I don't have the precise number but there are dozens of witnesses, including many who would be traveling from out of state.

THE COURT: When we say dozens, that could be anywhere from 24 on up, so just ballpark figure.

MS. GEDDES: Thirty-five witnesses.

THE COURT: Okay. And do you know approximately -- again, I'm not looking for exact numbers here, but approximately how many of those would be coming in from out of state?

MS. GEDDES: The majority of them would be coming from out of state so I would say upwards of 24 witnesses would be traveling from out of state.

THE COURT: And, you know, I know at least a few of the defense -- a few of the lawyers on the defense team are coming from Chicago, is it two of you from Chicago; is that right?

MR. ANTON: Two from Chicago --

MR. GREENBERG: Yes, your Honor.

MR. ANTON: -- and one from Jersey, myself.

THE COURT: Okay. We have a New Yorker too, don't we?

MR. FARINELLA: Thomas Farinella. Yes, Your Honor, I'm in New York.

THE COURT: Okay. Then so do you anticipate on the defense side that all of the lawyers will be in the courtroom during the trial?

MR. ANTON: Yes, Your Honor.

MR. GREENBERG: Yes, Your Honor.

THE COURT: Okay. I'm asking this for purposes of social distancing.

And then on the prosecutor's side, do you think you'll have three prosecutors?

MS. GEDDES: Yes, we'll have three prosecutors plus an agent.

THE COURT: Okay.

MR. GREENBERG: Your Honor, may I --

THE COURT: Who is speaking?

MR. GREENBERG: Steve Greenberg, I'm sorry.

THE COURT: That's okay.

MR. GREENBERG: I know here in Illinois they've done at least one jury trial, maybe two, and they had certain procedures in place including that the defendant and his counsel were to communicate by passing notes. I just --

THE COURT: I'm going to stop you for one second because --

MR. GREENBERG: Sure.

THE COURT: -- we really do our -- this is a new thing for all of us, but we're anticipating doing communication not by passing notes but by using headsets.

MR. GREENBERG: Okay.

THE COURT: I don't think that's going to be a problem in terms of that.

The reason why I'm trying to get as much detail from you all as possible is to try to figure out which of our courtrooms is going to be the best one to accommodate a trial like this. Obviously, the goal is to make sure that all of the systems are in place to enable both the government and the defendant to get a fair trial. So in terms of the numbers of people, I'm going to have to have a courtroom that's big

enough to be able to accommodate that.

I'm also --

MS. GEDDES: Your Honor --

THE COURT: Yes, go ahead.

MS. GEDDES: I'm sorry to interrupt. I also left out our paralegal who would also be sitting at the table with us.

MR. ANTON: I was going to add as well, Judge, it's Doug Anton speaking, that I will have at least one staff member there.

THE COURT: Okay. As long as I have the numbers I can figure out whether there is a courtroom in the Brooklyn courthouse or maybe even out in Central Islip that can accommodate everybody.

One of the other things I'm concerned about, and I'm sure this is the case in Chicago too, is that we have a -- New York is not doing so badly right now in terms of COVID cases, at least as far as I know, but there's some uncertainty around that, the extent to which when schools open and we just don't know what will happen, if there's going to be a second wave. I certainly hope that that's not the case but I do think it makes sense for us to change that date. What was it, September 29th?

MR. ANTON: Yes.

THE COURT: And turn that into a status conference

instead of a trial date. I'll hear you on that subject in a second but a couple of things I want to find out from the parties.

There's currently pending a motion for an anonymous jury and a partially sequestered jury. I guess there has been a few developments, I'll say, in the last week or so, I don't know to what extent anybody wants to supplement the submissions you've already made on that subject.

MS. GEDDES: Your Honor, this is Elizabeth Geddes for the government. We would request permission to file a very brief supplement outlining some of the events that you referenced just now.

THE COURT: All right. And I'll give you a schedule for that in just a minute.

Both sides have submitted proposed voir dire questions and I don't know if those need to be updated also, maybe not. I've read through them but I'll certainly give you a ruling on both of those things too. Once the government files their supplement, I'll give the defense an opportunity to respond to that.

MR. ANTON: Thank you, Your Honor.

THE COURT: So as I say, I don't think changing the trial date is particularly a surprise to anybody. Is there anything anybody wants to say about it?

MR. GREENBERG: This is Steve Greenberg. We

submitted a long time ago a letter requesting the Court set some discovery schedule. I understand that the trial date is not going to go ahead. We obviously have a client in custody, we're trying to do the best we can to work through the discovery so we're in a position as soon as the Court's ready to accommodate a trial. We can go to trial especially in the current situation if he remains in custody. Can the Court set a discovery schedule on our earlier request?

THE COURT: Well --

MR. GREENBERG: We --

THE COURT: -- what I'd like to do first of all is hear what discovery has been turned over. Why don't -- Ms. Geddes, can you address that.

MS. GEDDES: Yes, Judge. The government has provided several discovery letters of providing business records and documents that were seized pursuant to search warrants executed on Mr. Kelly's home as well as his storage facility.

In addition to that, the government is in possession of numerous electronic devices and has advised -- counsel has had an opportunity to review some of those devices in our office and just this morning I also spoke with defense counsel, Mr. Anton, about setting up a time for him to review some of the additional devices that were seized during a search on January 9th of Mr. Kelly's storage facility but with

the -- so the digital discovery is significant and we -- some of it amounts to child pornography and we have advised counsel that we are not going to provide just copies of the digital discovery as a result of that, but we will make that available and we will, to the extent that there is material that we are going to introduce at trial, we will notify defense counsel and extract it in some form and we have done this in part already.

MR. ANTON: Judge, this is Doug Anton responding. So far we've received from the government 144 numbered defense exhibits. Some of them have like, for example --

THE COURT: I'm going to stop you for -- a defense exhibit?

MR. ANTON: I'm sorry, it's discovery exhibits.

THE COURT: Okay.

MR. ANTON: It starts with DX that's why I said defense exhibit, I apologize.

THE COURT: That's okay.

MR. ANTON: Some of them have an "A" aspect to it like 140, 140A, which is just something that comments on it, so the number is larger when it comes to the file, but -- so we have those, we've been reviewing those to the best of our ability. Mr. Greenberg will talk about what is still necessary, and I'll touch on it briefly but --

THE COURT: Can you touch on it slowly, I just want

to make sure the court reporter can get down everything you have to say, so just slow down just a little bit.

MR. ANTON: A habit of mine.

THE COURT: That's okay. Go ahead.

MR. ANTON: So we have not had the identity of all the Jane Does provided to us yet nor have we been provided with their statements or any other evidence that relates to the allegations made by them, other than some travel records some of -- only some of which refer to the Jane Does by numbers. The Jane Does themselves, their numbers have changed since the second or third superseding indictment so we need to associate names with people with travel records so we can understand exactly what the government is putting forward and we can prepare a defense.

As I spoke with Ms. Geddes this morning, the issue of providing it 30 days in advance of a September 29th trial was coming up and it became readily available to us on the defense team that 30 days under COVID is an impossibility to do what normally would have been done in the past without the situation as it exists. So 30 days really makes itself into 90 days. So we discussed briefly the possibility of relooking at the protective order, providing that stuff with a 90-day window, at least this is what I asked for or I offered, and requested a larger window and even to narrowly tailor the eyes that would see some of these things at first, such as counsel,

us four gentlemen only at this time on the defense and then if we need to do an investigation of our own we can do it and then if we need to have professionals, investigators do it we can certainly make a similar application to the Court if we can't come to a consent with the government with regard to those things that are missing.

Also, once I, and probably Tom, Mr. Farinella, go and review the discovery, the digital discovery like we did last time, there may be some similar or additional requests what the government might define as CP, we might have an issue with, depending if it's not as clear for us, and wanted those things turned over. But basically we have an impossible situation where we can't get in to spend any considerable time at all, in fact any time with our client in the facility, phone calls are limited. Mr. Greenberg has somewhat of the ability to contact the client. No discovery can be reviewed under the circumstances we're in.

So we would like to get educated on everything so that when the MCC allows us in, we can fly out. Mr. Greenberg's local, he can take care of meeting with the client and --

THE COURT: You're speeding up a little bit, just take a breath.

MR. ANTON: Sorry, Judge.

THE COURT: All right.

MR. ANTON: -- and discussing what we can with regard to discovery.

Those are the issues that come to the forefront of my mind now and I believe, as everybody is acknowledging, that time extensions are necessary. The Court, we would ask, consider expanding that time period for us to review things but putting some precautions on it so it doesn't need to leave our eyes until we make a further consent agreement or a ruling -- or ask for a ruling for the Court.

I'm going to defer to Mr. Greenberg now who would like to touch upon these issues as well.

THE COURT: Okay, go ahead.

MR. GREENBERG: He does talk fast. This is Steve Greenberg.

Judge, I will try not to repeat too much of that but essentially at its core what we've gotten so far are a treasure trove of documentary evidence records, hotel records, bank records, all that kind of stuff but nothing that really tells the story. We don't have any witness statements, we don't have anything explaining any of the events really that are alleged in the indictment, and we'd like to get that stuff.

There is as protective order already in place. It's, frankly, having been through large cases, not one perhaps with the notoriety of this, but cases with this amount

of discovery before and lengthy federal trials, I don't think if we get the materials two months, three months before trial even that's going to be enough to really do an adequate job of looking at them and distilling them. I expect that at the end of the day the government still has probably tens of thousands of pages of materials for us.

THE COURT: Well, is that right, Ms. Geddes, do you have tens of thousands of pages of material?

MS. GEDDES: We do not have tens of thousands of pages of material. And Your Honor has previously ruled following our motion to not have to disclose what I think was actually defense's motion for a bill of particulars, that we would not have to disclose the identities of certain of the Jane Does. We have disclosed some of them and, frankly, the events of the past week I think further amplify the reasons why we don't think we should have to disclose that too far in advance of trial.

We certainly understand that defense counsel has a right to review this material to prepare a defense, but we believe that they are going to have that opportunity based on the discovery that's been provided, and in advance of trial we will obviously provide all of the 3500 material for our testifying witnesses and certainly they will see the names of the Jane Does during that.

MR. ANTON: Judge, it's Doug Anton. With respect to

what counsel just said, nothing that's happened in the last couple of weeks, although other people have been indicted, should bear any reference or any blemish or our client's name. Other people doing things that they are alleged to have done wrong should not mean that our client was involved in any capacity. The government has not made any allegation that I know of --

THE COURT: Slow down, slow down, slow down.

MR. ANTON: -- that I -- sorry, Judge.

THE COURT: I just want to make sure that -- it's really just for the court reporter so the court reporter can take down what you're saying. So go ahead.

MR. ANTON: The government has not made any allegations that I'm aware of that our client was involved in any way with the alleged dastardly deeds of three or more other people and that those matters will run their own course. But to even suggest that that should affect the Court's decision at this time is a reach.

Judge, everybody understands what's going on with the COVID situation and everybody is making allotments and delays. Our client is in jail and we can't even get in to see him or talk to him. We need time, like Mr. Greenberg said, we need time with basics knowing who it is.

Now to say that those people may have been identified in the past, we don't want to guess because if we

spend a lot of time investigating something or guessing --

THE COURT: I'm just going to stop you because that's not what Ms. Geddes said. She said that I think she's given you the names of some of the people and some of --

MS. GEDDES: That's correct.

THE COURT: -- the people she hadn't. I don't think she said that you could just guess. I think you submitted letters that you think you know, but I don't think that's what Ms. Geddes said, just to be clear.

MR. ANTON: Very well, Judge, my apologies --

THE COURT: That's okay.

MR. ANTON: -- and formally we have -- like, for example, one has another pending suit in state court in New York, obviously we know who that person is, but I don't want to be in a position, if Ms. Geddes didn't say that, I don't want to be in the position to have to guess with regard to name, time, place or anything. I don't think any of us want that --

THE COURT: Well --

MR. ANTON: -- so we need the identification, your Honor -- I'm sorry -- and we need some time to do what it is that the law allows us to do.

THE COURT: Well, I'm not changing my ruling on the protective order with respect to the names, but I do want to make sure that -- I assume that there's a numbering systems

that's being used, and I want to make sure the numbers conform to the right discovery. So if there is some -- you said there's been some change in the names or in the numbers --

MR. ANTON: Yes, Judge --

THE COURT: -- so if that doesn't match up anymore, I'm going to direct the government to -- I mean, I actually think you all can work this stuff on your own --

MR. ANTON: Yes.

THE COURT: -- without my involvement so I'm going to direct that you do that. I don't really involve myself in discovery disputes, certainly not at this juncture. So the rulings I've made in the past are still in place but obviously under all of the circumstances I am going to direct the government to provide discovery expeditiously so that the counsel do have enough time to review it.

All right, now --

MR. GREENBERG: Your Honor, may I just say one --

THE COURT: Is this Mr. Greenberg?

MR. GREENBERG: This is Mr. Greenberg, yes. May I make one suggestion based on something that was done in another case that I'm involved in here. I'm involved in a capital murder case federally and they provided discovery and they redacted the discovery, the government, to satisfy their concerns. And perhaps -- and then they are going to make another production of the same discovery when they get closer

to trial and I understand that there's some duplicitousness in that, but I think it sort of evens the playing field, at least a little bit, at least we would get some information that we could work on the case in the meantime on it and sort of start to put things together.

Would it be possible that that could be done in this case?

THE COURT: Well, that's one of those things that I'm going to rely on you fine people to work out. That sounds like a fine suggestion to me. I'm not ordering it at this point, but I am going to direct both sides to work together to try to come to some kind of accommodation here. I think that's a sensible approach. It's certainly one that has been used in other similar cases. So but truly try to work it out on your own.

MR. FARINELLA: Your Honor, this is Thomas Farinella. I just have one concern. Ms. Geddes mentioned the electronic discovery that myself and Mr. Anton have already reviewed but in doing that -- and the experience was incredibly cumbersome and it was not necessarily the most productive use of counsel's time in that there was really no rhyme or reason to the information that they made available. So I think that the electronic discovery that they're saying defense counsel can view, I think there should be some summary or some, you know -- you know, detail as to what's there

versus what's not, you know -- so given the fact that we are in this pandemic, having to go into the U.S. Attorney's Office, while I'm more than willing to do it, I think it would be much more helpful instead that the electronic discovery can be summarized or delineated in some form that would make it just a tad bit easier for us.

MS. GEDDES: Your Honor --

THE COURT: That sounds like a great thing that you all could work out.

Yes, Ms. Geddes.

MS. GEDDES: I was just going to say that we're more than happy to do just that and I will start another conversation with counsel about that.

One clarification, however, is I think, and defense counsel can correct me if I'm wrong, but I think defense counsel when they are using the term "discovery" they are also including 3500 material and that is really what we do not want to provide at this juncture. We will obviously provide it in advance of trial, we're not suggesting that we're going to provide it, you know, a week or two before trial, but I think that that's when Mr. Greenberg was talking about potentially providing redacted copies, he was in fact asking for redacted copies of our 3500 material. So I will endeavor to -- certainly I think we can come to an agreement on the digital evidence and I'm happy to provide summaries and point them in

the right direction as to what's particularly useful in the material for them, but we do continue to object to providing early disclosure of witnesses and 3500 material. But we will try to work it out and certainly involve the Court only if necessary.

THE COURT: All right. Let's work out on what is the discovery because it sounds like there is plenty of that, so try to get that finished and we can address the other things when we're closer to trial.

So do you want to keep that September 29th date for a status conference?

MR. ANTON: Yes, Judge.

MR. GREENBERG: Your Honor, this is Greenberg. Would that be by phone again?

THE COURT: Well, you know, I don't know. I don't know what the situation is going to be then. I think what we'll have to do is let you know when we are a little closer to the date. I mean, we are endeavoring to do in-person proceedings in certain cases. I don't think -- I know in Chicago you've done a jury -- two jury trials already, so we're not there yet but I don't know where -- this is a very long-winded way of saying that I don't know where we're going to be on September 29th, so I think we'll just have to see. We'll let you know in plenty of time.

MR. ANTON: For the defense, we would like to keep

that date. It's Doug speaking.

THE COURT: Okay. So that -- the case is going to be adjourned until September 29th that is an excludable adjournment in the interest of justice given the travel advisories that we have here in New York, given the uncertainty about what our public health situation will be in September, especially in -- we also have to keep in mind -- and I don't think I mentioned this before, we want to make sure that we can ensure the safety of our jurors in this district. Most of our jurors use public transportation and we're going to have to be aware of the appropriate social distancing for our jurors as well. So that is an excludable adjournment in the interest of justice.

I do think the government wants to supplement their submission, can you get that to us in a week, Ms. Geddes?

MS. GEDDES: Yes, certainly.

THE COURT: And how about another week to respond for the defense?

MR. GREENBERG: Sure, Your Honor. This is Greenberg. What time on the 29th --

THE COURT: Oh.

MR. GREENBERG: -- or you just let us know.

THE COURT: I'm going to ask the expert, Donna, did we have a time on the 29th? I guess we thought it would be a trial.

THE COURTROOM DEPUTY: Yes.

THE COURT: What do you have?

THE COURTROOM DEPUTY: 10:30.

THE COURT: 10:30. Does that work for everybody?

MR. GREENBERG: That would be 9:30 central time so that works.

THE COURT: You want to do it 11:30?

MR. GREENBERG: No, no, no, that's fine. I'm just clarifying in case the MCC is listening.

THE COURT: Okay. And then so I guess we have Labor Day, when is Labor Day?

MR. ANTON: The second week, the 7th.

THE COURT: I just didn't want -- I don't know if anybody celebrates holidays anymore, but I didn't want to ruin anybody's Labor Day with this briefing schedule.

MR. GREENBERG: Labor Day is the 7th.

THE COURT: Okay. Let's see, a week from today would be the 26th, and then a week from that is what, Donna?

THE COURTROOM DEPUTY: September 2nd.

MS. GEDDES: If we could file by the end of this week, if that makes life easier.

THE COURT: Okay. So whenever -- I'll give you the 26th but if you get it in earlier that's fine. September 2nd still okay for you, counsel?

MR. ANTON: Yes, Judge.

MR. GREENBERG: Yes, Your Honor.

THE COURT: All right.

Anything else that we have to address today?

MR. GREENBERG: Your Honor, this is Greenberg again. I was wondering, given all the number of people we're dealing with and the fact that other trials are also getting continued and getting set, would it be possible to get what we like to refer to here as a reserve trial date where we could at least tell other judges if they then went to set something that we might be on trial in Mr. Kelly's case so that other matter would be getting set as a backup to that. Perhaps -- we had talked with the government yesterday perhaps doing something like that in November.

THE COURT: Well, I have another trial scheduled in November that's older than this one with a defendant who is in not nearly as long but -- what's our November like, Donna?

THE COURTROOM DEPUTY: We have a two week -- a three-week trial in November starting on the 9th.

MR. GREENBERG: It's a great case to try over the holidays.

THE COURT: Yes, I'm sure it is. I'm not going to give you the date now because I'm not sure that would be at all helpful to any other judge that you're talking to. I don't know what's going to happen with my trial in November. If that one doesn't go, we could do this one, but what I can

do is take a look at our -- is see if I can get a better idea about that one and before the 29th give you a possibility, but, you know, nothing is certain, I don't have to tell you that and I'm not -- again, I'm not so sure how helpful that will be, but let me see what -- as I say, that trial is much older and that case is much older and the defendant is also in custody, so I'll have to do some checking on that.

MR. ANTON: Judge, it's Doug Anton. One more thing if I may. While I'm confident that the government and our side will be able to work out these discovery issues, if we're not able to can you create, for the sake of time, create a mechanism we can maybe supply the Court with letters with regard to our positions and the Court can examine them, maybe have a conference rather than doing full blown motions?

THE COURT: You can put something on ECF if you have a problem.

MR. ANTON: Okay.

THE COURT: You can send me a letter but I'm so certain that won't be necessary.

MR. ANTON: No.

THE COURT: I'm just so confident that I'm not concerned about it, so, okay, anything else that anybody wants to say?

MS. GEDDES: Not from the government.

MR. GREENBERG: No, Your Honor. Stay healthy

please. This is Steve Greenberg.

THE COURT: Okay, everybody. Thanks so much.

MR. ANTON: Thank you.

MR. GREENBERG: Thank you.

MS. GEDDES: Thank you.

(Matter concluded.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

s/ Georgette K. Betts — August 22, 2022

GEORGETTE K. BETTS — DATE