

U.S. Department of Justice

United States Attorney
Eastern District of New York

| | |
|---|---|
| EAG/NIS/MCM | *271 Cadman Plaza East* |
| F. #2019R00029 | *Brooklyn, New York 11201* |

June 17, 2022

**Submitted Under Seal**

<u>By ECF</u>

The Honorable Ann M. Donnelly
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Robert Sylvester Kelly
                  <u>Criminal Docket No. 19-286 (S-3) (AMD)</u>

Dear Judge Donnelly:

        The government respectfully submits this letter regarding restitution in connection with the sentencing of Robert Sylvester Kelly. As described herein, the government respectfully requests that the Court order restitution as set forth below in the amount of $357,218.18 as to the individual who testified at trial using the pseudonym "Jane," and $5,200 as to the individual who testified at trial using her first name Sonja.[1]

DISCUSSION

        To date, three victims – Jane, the individual who testified at trial as "Sonja" and Jane Doe #9 – have sought restitution. Jane seeks reimbursement for medical expenses, including past and future medical bills and prescription costs, psychological treatment expenses and lost income.[2] Sonja seeks reimbursement for psychological treatment that she would have obtained had she disclosed the defendant's abuse of her and advises that she wishes to seek psychological treatment in the future. (Second Addendum to the PSR, dated

---

[1]     The government will supplement this request if additional victims seek restitution.

[2]     Jane identified these expenses during telephone calls with the government.

June 13, 2022 ("PSR Addendum #2")). Jane Doe #9 seeks reimbursement based on her experience of mental anguish, STD infection, depression, PTSD and anxiety. (PSR Addendum #2).

I.      Applicable Law

The defendant's offenses of conviction were racketeering (Count One) and violations of the Mann Act (Counts Two through Nine). Therefore, two different statutes govern restitution. Restitution as to the racketeering offense (Count One) is governed by 18 U.S.C. § 3663, and restitution as to the Mann Act violations (Counts Two through Nine) is governed by 18 U.S.C. § 2429. For both, the government bears the burden of proving the amount of loss sustained by the victim by a preponderance of the evidence. See 18 U.S.C. § 3664(e); United States v. Reifler, 446 F.3d 65, 122 (2d Cir. 2006).

"A restitution award need only to be a reasonable estimate of the victim's actual losses." United States v. Donaghy, 570 F. Supp. 411, 423 (E.D.N.Y. 2008) (citing United States v. Germosen, 139 F.3d 120, 129–30 (2d Cir. 1998); United States v. Burdi, 414 F.3d 216, 221 (1st Cir. 2005); United States v. Futrell, 209 F.3d 1286, 1292 (11th Cir. 2000); United States v. Sapoznik, 161 F.3d 1117, 1121–22 (7th Cir. 1998) (district judge's estimate of 25% of the defendant's salary not an abuse of discretion where no more precise number could be easily determined)). "Although estimates are appropriate, a court must base its restitution award on more than mere speculation about a victim's actual losses." Donaghy, 570 F. Supp. at 423 (citing United States v. Catoggio, 326 F.3d 323, 329 (2d Cir. 2003)). "Uncertainties with respect to the amount in question should be resolved in favor of the victim in accord with the statutory focus on making the victim whole." Donaghy, 570 F. Supp. at 423 (citing United States v. Boccagna, 450 F.3d 107, 119 (2d Cir. 2006) ("[R]estitution attempts to compensate for loss by restoring the victim to a position he occupied before the injurious event." (internal quotations and alterations omitted)); United States v. Coriaty, 300 F.3d 244, 253 (2d Cir. 2002) (observing "the statutory focus on the victim's losses and upon making victims whole")).

Victims of the racketeering offense are entitled to reimbursement of certain expenses if the offense resulted in bodily injury and other expenses if the offense resulted in damages to or loss or destruction of property. Here, certain of the victims of the racketeering sustained bodily injuries, and therefore the Court may award restitution for losses, including:

> (2) . . . (A) . . . an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment; (B) . . . an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and (C) … income lost by such victim as a result of such offense; (3) … lost income and necessary child care, transportation, and

>other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense[.]

18 U.S.C. § 3663(b).

Victims of violations of the Mann Act are entitled to mandatory restitution pursuant to 18 U.S.C. §2429(a).[3]  The Court must award the Mann Act victims restitution in the "full amount of the victim's losses . . . ."

>[T]he term "full amount of the victim's losses" includes any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim, and in the case of trafficking in child pornography offenses, as a proximate result of all trafficking in child pornography offenses involving the same victim, including—(A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) reasonable attorneys' fees, as well as other costs incurred; and (F) any other relevant losses incurred by the victim.

18 U.S.C. §§ 2429(b)(3), 2259(c)(2).

---

[3] The mandatory restitution provision in § 2429(a) was enacted on December 21, 2018, as part of the Abolish Human Trafficking Act of 2017, Pub. L. 115-392, § 3, 132 Stat 5250.  However, the change in the law does not implicate the Ex Post Facto Clause. See, e.g., United States v. Wells, 177 F.3d 603, 610 (7th Cir. 1999) (holding that restitution is not "punishment" and has instead has "traditionally been viewed as an equitable device for restoring victims to the position they had occupied prior to a wrongdoer's actions," and therefore "a change in the law of restitution fails even to implicate the Ex Post Facto Clause"); United States v. Bodouva, 853 F.3d 76, 79 (2d Cir. 2017) ("Bodouva's restitution to her victims serves a different purpose (remediating a loss) than her forfeiture obligation (disgorging a gain; punishment), and thus had no bearing on her punishment for her crime." (internal citation omitted)); United States v. Peters, 732 F.3d 93, 101 (2d Cir. 2013) (explaining that "[c]riminal forfeiture is a form of punishment" and "[a]s such, it is distinct from restitution or other remedial actions, which are intended to return the victim and the perpetrator to the status quo that existed before the violation took place").

3

II.  Analysis

    A.  Jane

Jane suffered losses as a result of the defendant's offenses of conviction. First, with respect to Racketeering Act Eight (Mann Act violation) of Count One and Counts Two through Five, Jane sustained losses as a result of contracting genital herpes – caused by the defendant – including doctor's bills and medication expenses. Based on the average life expectancy for a female in the United States of 82 years old, see National Vital Statistics Report, U.S. State Life Tables, 2019, at 3, available at https://www.cdc.gov/nchs/data/nvsr/nvsr70/nvsr70-18.pdf, Jane will likely incur $281,168.18 in additional medical expenses, which equates to 53.5 years (i.e., the remaining years until she reaches the average life expectancy) multiplied by $5,055.48 per year in expenses.[4] Restitution in this amount is mandatory under 18 U.S.C. § 2429.

Jane also incurred expenses for psychological treatment and is entitled to receive restitution for both expenses she incurred in the past as well as those that she is projected to incur in the future. The government estimates that Jane will require at least 3.75 years of therapy – approximately the time-period over which the defendant abused her (i.e., the time period between September 2015 and July 2019 – excluding the months of September 2015 and July 2019). Applying a conservative amount of $100 per week, Jane will incur $19,500 in costs. See "How Much Does Therapy Cost," available at https://www.goodtherapy.org/blog/faq/how-much-does-therapy-cost ("Therapy generally ranges from $65 per hour to $250 or more. In most areas of the country, a person can expect to pay $100-$200 per session.").

With respect to Racketeering Act Eleven (Forced Labor) of Count One, Jane lost income and is entitled to reimbursement of that lost income because the forced labor resulted in bodily injury as to her in the form of physical assaults that caused, among other things, pain and bruising. See 18 U.S.C. § 3663(b)(2)(C) (allowing a court to impose restitution for lost income as a result of such offense when the offense resulted in bodily injury to a victim). As set forth at trial, during high school, Jane was an aspiring singer and participated in several selective courses and activities both through her school and in her personal time in connection with her singing abilities, some of which were "dedicated to a small group of [the] students who were working to get scholarships for performance." (T. 776; see also T. 776-77). After meeting Jane and grooming her for sexual abuse under

---

[4] According to www.drugs.com, without insurance, the cost of a 30-day supply of 500-gram Valtrex oral tablets, a medication commonly used to treat genital herpes, is $421.29, which amounts to $5,055.48. See "Valtrex Prices, Coupons and Patient Assistance Programs," available at https://www.drugs.com/price-guide/valtrex#:~:text=The%20cost%20for%20Valtrex%20oral,not%20valid%20with%20insurance%20plans. An annual visit to a gynecologist, without insurance, is approximately $200. Accordingly, the average annual costs to Jane will be $5,255.48.

4

the pretext of assisting her with her musical career, the defendant required Jane to abide by all of his rules, as a direct result of which, Jane did not attend her senior year of high school in person. Accordingly, Jane lost the opportunity to obtain a college scholarship based on her musical talent. Additionally, the defendant did not allow Jane to work throughout the time that she was involved with the defendant, and she therefore lost on the ability to earn income that she would have otherwise earned in the workforce.[5] Assuming that Jane had worked 2080 hours per year (52 weeks per year x 40 hours per week) at the prevailing minimum wage ($7.25 per hour – see https://www.dol.gov/agencies/whd/minimum-wage/history/chart) for 3.75 years (September 2015 until July 2019 – excluding the months of September 2015 and July 2019), Jane would have conservatively earned $56,550.[6] Alternatively, the government submits that Jane should be awarded restitution in the same amount in lost income as a result of the labor she provided to the defendant for which she was not compensated.

Finally, Jane may be entitled to reasonable attorney fees that she has incurred. If Jane provides documentation related to these fees, the government will supplement this submission.

B.  Sonja

The government submits that Sonja is not entitled to reimbursement of expenses that she did not, in fact, incur. Because Sonja has advised that she has not yet incurred any expenses as a result of the defendant's offense of conviction and instead provided expenses she hypothetically would have incurred had she sought psychiatric and/or psychological care at an earlier date, the Court should not impose restitution as to Sonja for

---

[5] At trial, Jane testified that even after the defendant was incarcerated, the defendant would not allow Jane to work at a job at which she would interact with other men and insisted that she and another then girlfriend, Joy, worked together. (T. 1300-01). Unsurprisingly, they were not successful in finding a job that met the defendant's specifications. Nonetheless, the lost income calculation set forth herein does not include restitution for any portion of the time period the defendant was incarcerated on the current charges.

[6] Had the defendant been convicted of forced labor, in violation of 18 U.S.C. § 1589 – rather than, as here, racketeering, including forced labor as a predicate racketeering act – the Court would be required to impose restitution and "include the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. 201 et seq.)." 18 U.S.C. § 1593(b)(3).

those expenses that she did not incur.[7]  However, Sonja also seeks reimbursement for expenses related to psychiatric and psychological care in the future.  Applying a conservative estimate of $100 per hour and estimating that Sonja will require therapy for approximately one year, the government submits that Sonja should be awarded $5,200 in restitution.

    C.    <u>Jane Doe #9</u>

Similarly, the government submits that Jane Doe #9 is not entitled to reimbursement of expenses that she did not, in fact, incur.  Because Jane Doe #9 has not advised that she incurred any expenses or any expenses that she reasonably expects to incur as a result of the defendant's offense of conviction, based on the information available to date, the Court should not impose restitution as to Jane Doe #9.

III.    <u>Request for Sealing</u>

The government respectfully requests that (a) this letter be filed under seal and (b) any restitution order and any related documents be filed under seal or redacted in a manner to prevent public disclosure of the victims' identities or any other identifying information that would undermine their continued anonymity consistent with the Court's previous orders.  Under these circumstances, the privacy interests of the victims outweigh the public's qualified right to access.  As the facts set forth above provide ample support for the "specific, on the record findings" necessary to support sealing, <u>Lugosch v. Pyramid Co.</u>, 435 F.3d 110, 120 (2d Cir. 2006), the government respectfully requests that the Court record those findings and file this letter under seal.

---

[7]    While Racketeering Acts Three and Four were found not proven, as set forth in the governments post-trial and sentencing-related submissions, Sonja is a victim of the defendant's racketeering activity, the offense of conviction in Count One.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court enter a restitution order in the amount of $357,218.18 to be paid to "Jane," ███████, and $5,200 to be paid to "Sonja," ███████, in the above-referenced case.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/
Elizabeth A. Geddes
Nadia I. Shihata
Maria Cruz Melendez
Assistant U.S. Attorney
(718) 254-7000

cc:   Clerk of the Court (BMC) (by ECF)
Jennifer Bonjean, Esq. (by ECF)
Frank Nikolaidis (by e-mail)